Court. We have two cases here today that are related. They're separate but they're very much related. They overlap in facts and some legal issues. They're both employment cases arising under the Missouri Human Rights Act. The first is a failure to hire or a failure to promote case and the second is a constructive discharge case. I'm going to focus on the 2-1531. I'm going to attempt to break down my argument on that case into three sections. First a brief overview of the relevant facts. Second, a brief discussion of the applicable legal standard. And third, a detailed discussion of the trial court of the district court's judgment and where we allege the district court went wrong. Mr. Bonomo is a lifelong Boeing employee. He started in 1985. At the time it was McDonnell Douglas but they since merged and he stayed on with Boeing. The relevant time period for these cases is 2017 and 2018 primarily. In 2017, Mr. Bonomo was a level K manager on the flight ramp here at Boeing's facility in St. Louis. Boeing ranks its management via letters. The closer you are to Z the higher level manager you are. He was a level K which is fairly high but they are obviously higher than level K. The flight ramp is basically where they finish off the airplanes, the F-15s and the fighter jets here in St. Louis where they're sort of finalized and certified and whatever that may be. In early 2017 there was one level M manager on the flight ramp here in St. Louis. So the higher level than where Mr. Bonomo was. That was held by a man named John Mueller. In March of 2017 the powers that be decided they needed two level M managers on the flight ramp here in St. Louis. So they would be adding one. That position was posted and set up for applications. Numerous people applied including Mr. Bonomo and including a young man named Aaron Boswell and a young man named Daniel Etchen. Just for your convenience Etchen is spelled O-E-T-G-E or J-E-N. You'll see that in the record. It doesn't necessarily fit so I just draw your attention to that. In the application process the hiring manager used an objective worksheet called a new hire screening worksheet where they take the- Counsel, we've read the basic facts. What is erroneous about the district court's grant of summary judgment? So what's erroneous here is that the district court did not consider the evidence of pretext, the different indicia of pretext in totality. So when you read the district court's judgment we point to seven. This is a McDonnell Douglas burden shifting case where you got the prima facie case which isn't in dispute. Then the defendant has to put up their proffered justification, their non-discriminatory justification which here they said the interview was better for Mr. Etchen who was hired. And then you get to where the burden shifts back to us and we have to point to the indicia. Counsel, wasn't it undisputed that on the first application that Mr. Bonomo didn't himself assess his performance in the interview very favorably? That is. And that's the first interview. And we're not challenging the first hiring decision. We're not challenging the decision to hire Mr. Boswell in 2017. The only failure to hire claim relates to the last hiring decision in 2018 placing Mr. Etchen into the permanent level M manager position. That's the only claim as far as failure to hire that we are challenging in this case. I think the initial hiring of Mr. Boswell has some relevance in the sense that it ties into the pattern of every person that was put into a level M manager position. What is the evidence in the record of an age animus? So this is a pretext case. So there is no direct evidence. So you've got two ways you can prove a discriminatory intent. You can do it with direct evidence such as an admission, a confession or direct comments, discriminatory comments. We admittedly do not have that in this case. And it's my experience you rarely have that. Employers know better than to say those things. So the courts have set up a system when you don't have direct evidence of age discrimination where you can still prove age discrimination by essentially attacking the proffered reason from the defendant with enough indicia of pretext where a jury can infer that the decision was not really what they say it was but instead was discriminatory. And so that's why the courts have been very clear, including this court, that we pointed to seven indicia of pretext. And the trial court went through each one individually and some of them determined that it was there, for example, a policy violation. The evidence is clear that there's a policy that required the hiring manager to consider all sorts of different factors including relevant work experience, education, technical knowledge, all these sorts of things that you would expect to be considered. But this hiring manager said just the interview. That's the only thing. And so we point to seven indicia and there were three people on the hiring committee. That's another factor that we point to. That's another indicia of pretext because every person on the hiring committee for this final decision, the only one that we're challenging, was in their mid to early thirties. So everybody hired into these positions were in their mid to early thirties. Everybody on the hiring committee was in their mid to early thirties. Don't you need more than just the age of the individual for that to be indicative of some age animus? Exactly. And that's why the trial court got it wrong. Because there is more than those things. There's everything that we point to in the record and the court... Are there any cases that say that the age of the decision maker is indicia of pretext? Yeah. There are cases cited in the brief that they don't, not just the decision maker, they call it a stacked hiring committee. And there are cases that recognize that if the hiring committee is stacked with people who might tend to favor one person over somebody in a protected class, then that can be considered indicia of pretext. So it's not just that the hiring manager was... Would it be enough just that they're younger? No. No. And that's why the district court got it wrong. And that's what the whole fundamental issue is. When the district court considers each one on its own, each of the seven indicia that we point to and considers it on its own and says, okay, that might be here, but that's not enough. And then never gets to a point at the end of its analysis where it says, all right, now I'm going to consider all these things in totality. But each one has to contribute. I mean, you can't point to it and say that the three members of the hiring committee had blond hair. Therefore, I'm entitled to an inference that they discriminate against somebody who's older. It has to, each one of those has to have some tendency toward discrediting either the proposed legitimate reason or lending toward a reasonable inference of age discrimination. Well, I think I understand what you're getting at. And the cases point to stacking of a hiring committee. I'm never going to be able to pull back the curtain. And that's why this is a McDonnell Douglas burden shifting. I'm never going to have them saying to each other, we want somebody young. So what the courts say is all these things, and if you have enough of them together, without direct evidence of age, it's enough. And that's why I cite to the Harrison case. You're saying the fault of the district court was not making a conclusion that the sum of these various indicia don't equal sufficient proof. So that if a dollar is the required level and you got ten things, but you don't have a single dime in the ten things, you never get to the full complement necessary. So you're saying what the district court did was look at these things individually, but didn't complete the process of adding them up to see if they were sufficient. That is exactly correct. That is exactly correct. And the Harrison case, which I've cited, and it's the primary case we rely on in our brief, talks about in that case there were two indicia Then take the next step. Explain to us why these various things add up to enough. So the first thing that we pointed to is a policy violation. And the cases are crystal clear that if you've got a hiring manager who violates the company policy in the way that they make the hiring decision, that can be an indicia of pretext. And here, the policy required the decision maker, which was a man named Mr. DeWeese, to consider numerous factors. And by their own admission, Mr. DeWeese did not consider any factor other than the interview. He said the interview, Mr. Etchen interviewed better. That's why I hired him. That's the only reason why I hired him. What's the precise language of the policy of what the individual stated? The precise language is the, because he has to put in a reason in the paperwork. And the reason is Etchen interviewed the best of the candidates. Interviewed the best. Well, why is that a statement that means nothing else mattered in the process? That statement doesn't seem by itself to be conclusive of the entire evaluation of the candidates. Well Judge, I think it does indicate that because the question in the paperwork says why did you hire the person you hired, he said because he interviewed the best and listed nothing else. And he's admitted, the record's clear, he admitted in his deposition that he didn't consider anything else. The district court itself recognized that there was a policy violation, or at least if you view the evidence in favor of the plaintiff, there was a policy violation there. Well, I'm not so sure that's true. Reading the district court's opinion, Boeing's standardized interview booklet informs hiring managers that other factors may be considered but need not be. Yeah, there are differing, and that's what the district court said. There are different things. There are different sort of guidelines that Boeing has that sort of contradict the policy. But the district court said, viewing the evidence in favor of the plaintiff as I'm required to, and as this court is required to, a reasonable jury could easily conclude that there was a policy violation here in hiring the Mr. Etchen. And so the next thing, the next indicia we point to is a pattern. And so you've got three open positions, and all three were filled with someone in their mid to early thirties. The district court excluded one of those, which I think was improper. The reason she we didn't challenge that as anything improper, but I don't think that means it's not part of the pattern. It's still part of a pattern. But even if you exclude that, you still have a pattern. It's a smaller pattern. Did the record include the ages of the other candidates for the other positions? Yeah. And so there were, it wasn't, Mr. Bonomo was not the only person over 40. There were other people. And again, this is why considering it in totality is important. I would acknowledge to you that that factor, and in fact, all seven of these factors, when you consider them by themselves, are not going to be enough. That's what the courts are pretty crystal clear about. There isn't any indicia that by itself is going to allow an inference of pretext, which means you have to point to more than one, as in the Hairston case, which is a recent case from this court. There were two there, and they said that was enough for The thing that often wins is that the proffered reason has either no basis in fact or is false. That's one way, but the way you show that is through these indicia. That's not the, if That's just one way. I mean, that's one way to do it. Right. But the most common way, because you're very, what the indicia of pretext allows is an inference that it's false. We're not going to have direct evidence where they say this isn't the real reason why we did it. So the only way you're going to prove that, and that's the whole point of the McDonnell Douglas burden shifting standard, is it allows a jury to reach the conclusion that what they're saying is not true. It doesn't make sense. You've got all these other factors that say, no, it doesn't make sense. I'm never going to be able to get direct evidence. I'm never going to get an admission or a confession. So the only way that it can be proven is through these indicia. And the Harrison case is a perfect example, because in the Harrison case, the Eighth Circuit even said, you know, look, they may be telling the truth, the employer. That might be, and maybe that is what the jury finds, that the proffered reason is the real reason why, in that case, the person was terminated. But this other stuff around it, this smoke around it is enough where we can allow the jury to determine whether or not there's a fire. And there's a great quote in Hairston where they specifically say that the question isn't whether or not the plaintiff proves definitively that, you know, the proffered reason is false. It's whether or not there's enough. Here, let me see. This is from Hairston. Though the burden is on the plaintiff to provide evidence of pretext, to survive summary judgment, she need not definitively prove that her employer's reason for firing her was pretextual. Rather, she simply must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive. And that's where you, when you consider all the different indicia together. Mr. Ponder, looking at the district court's opinion, I agree with you. It does seem to take one by one by one and look at them separately. Was it in the summary judgment response that I assume you would have filed, did you make the argument that the court had to consider them in totality? Yes. Yeah. These are all, and frankly, I've never seen it done that way, where it's separated out completely. Because necessarily, if you do it that way, you will never, by definition, you will never, there could be 50 indicia, but it would never be enough if the analysis is done that way, because one by itself is never enough. So we argued, as we argue today, that court, district court, Judge Pitlett, look at these seven factors. And when you look at all that combined, there's enough smoke here for the jury to determine whether or not there's a fire. I am into my rebuttal time, if I can. Thank you. Thank you, Mr. Ponder. Mr. Schoenberg. May it please the court. Plaintiff admits that he's interviewed poorly his entire career. Plaintiff also admits he has, quote, always felt that the reason I didn't get promoted was because I bombed the interview. Boeing agrees with plaintiff. The reason plaintiff was not promoted in 2018 is because someone else did a better job during the interview process. That is the reason the panel gave, and that reason is supported by the contemporaneous notes and other statements of the panelists, who cited specific examples to explain their conclusion that Daniel Etchen gave answers convincing them that he would be better for the job. Plaintiff may think that the decision was unfair, but that still leaves the fact that there is still no evidence that the decision had anything to do with plaintiff's age. Plaintiff admits that he has no knowledge, quote, of any facts suggesting that any of the hiring panelists considered age in deciding who they picked for the job. And plaintiff's brief, indeed, does not present any facts that support his age claim. Plaintiff's opening brief makes arguments for two types of claim to pretext evidence, but neither argument has merit. Plaintiff says that he has pattern evidence, but all plaintiff points to are the two jobs that he did not get. That is not a pattern of age discrimination. To the extent that two jobs can be a pattern of anything, that is only a pattern of bowing green with plaintiff that he bombed his interviews. That is made all the more clear by two additional facts. The two decisions were made by two entirely different interview panels, and plaintiff himself admits that the first panel believes that the other candidate really was better. So there is no pattern of anything that could be construed as age discrimination against the plaintiff. Was there anything put in that either of the candidates hired lacked qualification or were inferiorly qualified to the plaintiff? There is nothing that suggests that anyone who got the job was less qualified than plaintiff, and that does, in fact, bring me to the second argument that plaintiff tried to make in his opening brief, which was that he was more qualified than Mr. Etchin. That argument relies completely on the suggestion that a 2017 ranking shows that plaintiff was more qualified than Mr. Etchin in 2017, the job that's not at issue. And thus he concludes that he must have been more qualified than Mr. Etchin in 2018, the job that is at issue. But both the premise and the conclusion of that argument are incorrect. The 2017 ranking was based only on the written resumes that the applicants themselves submitted. There's no other evaluation that went into that determination. The 2018 promotion not only comes a year later with, of course, corollary changes in the experience of the candidates, but it was not based on resumes. It was based on the interview process itself. There's nothing else in the record that plaintiff has even attempted to point to that suggests that Mr. Etchin was unqualified for the position or, in fact, that he was less qualified. Is it a disputed fact that there was a violation of policy in relying so heavily on interview? The district court found that a jury might find that there was a departure from the process. That's true. The district court found that. I think that it's not a material departure from the process if there was one. Boeing says there wasn't one. The forum itself that Mr. Dewey is the head of the panel, the interview panel, the forum itself that he filled out has a box to mark was this based only on the interview? And he marked that. Yes, it was based only on the interview. That seems to suggest that it's at least contemplated that an interview, that the result might be based only on the interview. Otherwise, there'd be no reason for that box. But there is some, I acknowledge there are some policies. Is there something in the record to show what that box is designed for? I mean, is it to show that we've got a problem if this box is checked in terms of process? No, there isn't anything like that. I would say there are definitely, there's one policy that suggests that other factors should be considered. But it doesn't say, for example, it says you, for example, you should consider education also or work history also. But it doesn't say that the source of that information can't be the interview process. I think it's important to note that just because the decision is based on the interview doesn't mean it's based on interviewing skills. It's also, it's based on the information, the job-related information that the panelists get during this structured interview process. And this particular process, the panelists themselves, the record includes that their findings that Mr. Etchins' answers to the questions were simply better and made them think that he was better suited to this position. I don't, it's also not surprising, for example, perhaps that Planoff didn't do well in his interviews. He admitted that he didn't prepare for those sorts of questions. Let me, let me ask you about that because Mr. Ponder in his argument suggested that that admission was related to the first interview that he says is really not at issue here. The lack of preparation? Well, the, I bombed it. Oh. Well, that's not what he says in his deposition. He says, I believe I interviewed poorly. I have felt that way my entire career and I have always felt that the reason I didn't get promoted was because I bombed the interview. That's fairly general. But the record does reflect, in fact, that he didn't prepare for either interview. At least he didn't give any thought to the sorts of situational questions that he might be asked, the sorts of questions that the panelists indicated made Mr. Etchin a better fit for the position. All right. Let's go to what I think was Mr. Ponder's, the heart of his argument, which was there are these seven or eight items of pretext that we put forward and the district court never considered them in totality. Right. What's your response to that? So I have a couple of responses to that. Planoff, in fact, does say that there are pieces of pretext evidence that ought to be considered in their totality. I will point out that the only arguments meaningfully put forward in Planoff's appellate briefs are the two debunked arguments about pattern evidence and qualification evidence. We only know about the other five and their substance from the district court briefing. Now, even if those weren't forfeited by their omission from the appellate briefing, none of those other pieces shows age discrimination either. I think what we have is plaintiffs going through cases, picking out different things that courts over the years have said could be indicia of pretext. What we don't have is any evidence that they're indicia of pretext for age discrimination in this case. Let's go one by one. The bowling policy. The bowling policy, as I've already indicated, does allow decisions to be based on interviews alone. But even if it didn't, what the district court found was there's no indication here that any departure from such a policy suggested age discrimination. And the fact is that this Court's cases, Schaffhauser v. UPS being one of them, says that just because there's a departure from policy, that's in the business judgment of the employer. If they want to depart from their own internal policies, they can certainly do so unless there's some reason to think that they did so because of a prohibited reason. And here there's just no evidence of that. Plaintiff points to the use of subjective criteria, but this Court's authority makes clear that the use of subjective criteria are not prohibited, is not prohibited, and that there's nothing suspicious about using interviews, particularly when they reveal objective job-related factors, as here, or even about considering the performance during the interview itself. The concern with subjective criteria, of course, is the risk that employers might invent subjective factors as a mask for bias. That's, I think, from the Cox case, but there is no such risk here where everyone agrees that Plaintiff performed poorly during his interview. Nobody's making it up and just saying, oh, well, yes, he performed poorly during his interview, and that's our reason, and you can't, and how are you going to prove otherwise? That's not what's going on here. Everybody agrees he performed poorly, and nobody thinks that interview performance is not a legitimate reason, with the exception, perhaps, of Plaintiff, who says it's illogical to base the decision only on interviews. But again, the Court's case law makes clear that employers are free to use their business judgment to decide for themselves what qualifications are important and how to determine who is best qualified for a particular job. Plaintiff talks about stacking, but stacking is when there's evidence that the panel has been picked because they're going to reach a certain result, a particular biased result. For example, if the person picking the panel has age bias and picks a bunch of like-minded people, but there's just no evidence of any of that. Plaintiff's only evidence is that somebody picked the panel, and he calls that stacking. Well, is it the fact that the panelists selected were all below a certain age? The Court's law makes clear that the mere age of the decision-maker is not indicative of any kind of bias. We cite cases in our brief to that effect, one of which I think goes something like, if that were the case, then any time a black manager fires a white employee, that would be automatically evidence of a racially discriminatory decision, and that's simply not the case. The final of the factors that the plaintiff mentioned in his district court briefing is that Mr. Dewey's, the panel chair, concealed that the real reason was the interview performance. Mr. Dewey's did, in fact, neglect to fill in that reason in one of the places on the form, but there's no evidence of concealment. The form is replete with evidence that it was the interview that made the determination. Not only did he check the box that says this decision was based only on the structured interview process, but, of course, the notes of the panelists are included. So there is no evidence of pretext. At least, there's no evidence of pretext that this was a decision, a reason given for a decision which is a mere pretext for age discrimination, which, after all, is the issue. The real issue here, of course, is, is there enough for a reasonable jury to find that this promotion decision went to Mr. Etchin instead of plaintiff because of age discrimination? And there simply isn't. Zero times the two arguments that plaintiff actually put forward in his appellate briefs is zero. Zero times the seven arguments that he made in the district court is still zero, and there is, in fact, zero evidence of anything in the record suggesting age discrimination. I will point out also that the Hairston case, on which plaintiff relies, talks about totality of the circumstances, but perhaps talking about the facts in Hairston will illustrate more what the court was discussing when it mentioned totality of the circumstances. In that case, the, it was a retaliation case. The plaintiff engaged in protected activity. The defendant shortly thereafter terminated the plaintiff, and the evidence, the case law says that mere temporal proximity is not enough. And the court said, well, that may be true in the usual case, but here the reason you gave for terminating the plaintiff was something you knew about six months ago. And so putting all that together, the temporal evidence starts to look more suspicious. That's what the court meant by totality of the circumstances. It certainly didn't mean you can just come in with a laundry list and not connect any of them to the prohibited characteristic at issue. I know that plaintiff did not mention the constructive discharge claim, the other claim in this case. It's before the court this morning, but I have a few minutes, so I would like to address that claim. The 180-day limitations clock for plaintiff's MHRA constructive discharge claim starts running once he notifies his employer of his intent to retire. Here, more than 180 days prior to his charge, plaintiff gave clear notice of his retirement intent to his senior manager, so the claim is time-barred. In the district court, plaintiff claimed the actual trigger date is the date he submitted his official retirement paperwork. In his opening brief on appeal, plaintiff added the twist that, after all, until he submitted his retirement paperwork, maybe he would have changed his mind. Bowie explained in its briefing why that was wrong, and in his reply brief, plaintiff changes tack again to say that the real issue is whether an email to a manager can constitute notice to the employer. And that argument simply fails for three reasons. First, it's a new argument made for the first time in the reply brief. Second, it ignores the context of the notice rule in a constructive discharge claim. The constructive discharge cause of action is based on the idea that conditions are so intolerable that the employee concludes he has no choice but to resign. The date on which the employee makes his announcement reflects the last possible date that the employee reached that conclusion, that conditions are so intolerable, I have to resign. Are there any specific policies that Bowie has for submission of notice? I don't believe there's any such thing in the record. But the point I'm getting to in terms of the context about who gets the notice, which was plaintiff's argument in his reply brief, is that it doesn't matter so much who the specific recipient of the communication is. What matters is that the communication reflects that plaintiff has reached that conclusion, that is, that the cause of action has accrued. And that's why it starts the limitation clock. And here there's no question but that the communication reflected that that was plaintiff's decision. In fact, it reflected exactly what happened. It gave the date he was going to resign, and that's the date he retired. Third, the argument is frankly also wrong even if we just ignore the context of the rule and focus on the identity of the notice recipient. These cases are not in our briefs because the argument wasn't brought up until plaintiff's reply. But Missouri cases make clear that notice to a manager is imputed to a corporate employer, which, of course, can only act through its human agents. I would point the court to Diaz v. Auto Zoners for a case that discusses that principle in the context of the Missouri Human Rights Act. Even if it had been timely, the constructive discharge claim still fails. Of course, if plaintiff can't meet any one element of the cause of action, his claim is appropriately disposed of on summary judgment. And here plaintiff has no evidence for any of the elements, much less all of them. Were the conditions so intolerable a reasonable person would feel compelled to quit? To the contrary, plaintiff admits he could have stayed in his job, but he chose to retire because he wasn't going to be offered promotional opportunities to a different job. As a matter of law, not being promoted does not make conditions so intolerable that you feel a reasonable person would feel compelled to quit. Is there any evidence Boeing intended plaintiff to quit? Plaintiff admits he doesn't know if Boeing intended him to quit. So plaintiff's only argument in his opening brief was that that's not a required element of the cause of action and that he just doesn't need any evidence to show that Boeing intended for him to quit. The plaintiff did not defend his position in his reply. Thus, he's tacitly conceded the legal point, and he still hasn't provided any evidence to support the element. And is there any evidence that plaintiff gave Boeing the opportunity to remedy the problem? Boeing never – plaintiff never complained about anything other than his promotions. And the promotions can't support his claim. First, because failure to be promoted doesn't give rise to a constructive discharge claim as a matter of law. And second, even if it could, 11 months passed between the most recent promotion decision and his 2019 retirement. That makes clear that conditions could not have been intolerable enough to force him to retire. There's also no evidence Boeing did anything motivated by age or retaliation. And, of course, like in any discharge case, the motive is what the court is trying to determine. I am happy to answer any further questions from the Court. But hearing none, Boeing would ask that the Court affirm summary judgment in both cases. Thank you. Thank you, Mr. Schenberg. Mr. Ponder, your rebuttal. Thank you, Your Honor. My police court? Yes. So, first, with respect to the alleged admissions by Mr. Bonomo, they say that Mr. Bonomo admitted in his deposition that there were no – there's no evidence of age discrimination. Again, this is a difference between direct and indirect. We acknowledge – we've acknowledged from the beginning that there is no confession, there is no discriminatory comments. What we have is indicia, a pretext, where a jury could infer that the reason they're giving is baloney and what's really going on is age discrimination. The other issue with regard to admission about whether or not he interviews well, you asked, Judge Gruner, and the record is clear. It's cited in our reply brief, the specific page in the record. Mr. Bonomo testified that after those – after that first interview where Mr. Boswell was hired. So when he interviewed for the permanent job that was given to Mr. Etchen, he did a whole bunch of prep before that to get better at this. He did testify that throughout his career, not a good interviewer acknowledges that. This final one, he gave it his best foot forward, he prepped, and he thought he did a good job. So, just to clarify the record on that. So, and then, I think what's – what this fundamentally comes down to, what the district court sort of did wrong is every time the district court shot down one of these indicia as not being enough. Judge Pitlick then referred to, well, yeah, that's here, they violated a policy, you know, there's a pattern, it's a small pattern, the hiring committee, you know, these things. She said, but there's nothing indicating age discrimination. But that's the whole point of the McDonnell Douglas burden shifting standard. She's basically applying the standard for cases that don't have direct evidence of age discrimination and she's basically applying a direct evidence standard. I'll be the first one to admit, there's not going to be any evidence specifically that says age here because they're not going to shifting analysis even exists. So, what the trial court needs to do is look, okay, I know there's no evidence of age discrimination, but when I look at all these factors together, when I look at all these things together, is there enough for me to say, you know what, I think a reasonable jury could say that what they're saying, that the only thing they considered was the interview is nonsense and really what's going on is they're looking to get younger management on the flight ramp. And my time is essentially up, I've got two seconds. So, thank you, judges. Thank you, Mr. Ponder. Thank you also, Mr. Schenberg. The court appreciates both counsel's participation and argument before the court this morning. We'll continue to review the case and take it under submission. Thank you.